IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **GEICO MARINE INSURANCE COMPANY,** | * | |
| | * | |
| Plaintiff, | | |
| v. | * | **Case No.: GJH-19-1457** |
| **ROBERT CARNES,** | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This Declaratory Judgment action arises out of a marine insurance coverage dispute related to fire loss that occurred on June 30, 2018. Pending before the Court is Plaintiff's Motion for Summary Judgment. ECF No. 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's motion will be granted, in part, and denied, in part.

**I.      BACKGROUND[1]**

On September 7, 2017, Defendant submitted an application to Plaintiff for a policy of marine insurance for a 1997 32' Regal Boats Commodore 322, Hull ID RGMB80731697. ECF No. 12-2. The Application disclosed Defendant's mailing address as 361 Willard Rd., Conway, SC 29526. *Id.* at 1. That same day, Plaintiff issued Defendant Policy No. BUS5645186-00 (hereinafter "the Policy"), affording $33,000.00 in first-party property damage coverage for the 1997 Regal Boats 32' Cruiser, Hull ID RGMB80731697, identified on the Policy's declarations page. ECF No. 12-3. The Policy stated it would be in effect from September 7, 2017, to

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

September 7, 2018. *Id.* at 1. The Policy further stated that Plaintiff "will give notice at least 10 days prior to the proposed effective date of cancellation if cancellation is for nonpayment of premium." *Id.* at 2.

On the same day the Policy was issued, Plaintiff issued to Defendant a Premium Payment Notice detailing the schedule of premium payments for the Policy. ECF No. 12-4. The Premium Payment Notice required that Defendant adhere to the following premium payment schedule:

```
$200.00 premium payment on 11/07/2017
$200.00 premium payment on 12/07/2017
$200.00 premium payment on 01/07/2018
$199.00 premium payment on 02/07/2018
$199.00 premium payment on 03/07/2018
$199.00 premium payment on 04/07/2018
$198.00 premium payment on 05/07/2018
```

*Id*. On November 6, 2017, Defendant attempted to make a $195.00 premium payment by credit card, but the credit card was declined. ECF No. 12-5. Plaintiff issued Defendant a Notice of Declination by email. *Id.* Defendant states in his Answer to the Complaint that he set up an automatic payment to pay the premiums, but there had been fraud on the card on file and it had been cancelled by the bank, leading to the credit card being declined on November 6, 2017. ECF No. 5 at 4–5. He further states that he paid the balance on November 7, 2018. *Id.* at 5. On February 6, 2018, Defendant again attempted to make a $194.00 premium payment by credit card, but the credit card was declined. ECF No. 12-7. Plaintiff again issued him a Notice of Declination by email. *Id.* Defendant states in his Answer to the Complaint that due to a faulty chip in the credit card on file, he had gotten a replacement card. ECF No. 5 at 5. The new card had a different expiration date, causing the card to be declined. *Id.* Defendant did not state whether he eventually paid the balance due. *Id.*

On March 29, 2018, due to Defendant's failure to pay the premiums due for the Policy, Plaintiff issued a Cancellation Notice, effective April 14, 2018. ECF No. 12-8. The Cancellation Notice was mailed to Defendant at the address disclosed on the Application and identified on the Policy's declarations page, 361 Willard Rd., Conway, SC 29526. *Id.*; *see also* ECF No. 12-2; ECF No. 12-3. Plaintiff provides an affidavit stating that Defendant did not make premium payments in March or April 2018. ECF No. 12-6 at 2. Defendant did not state in his Answer whether he made payments in those months.

On August 24, 2018, Plaintiff received the first notice that the insured vessel suffered a major loss by fire on June 30, 2018. ECF No. 12-9. On May 17, 2019, Plaintiff filed a Complaint in this Court seeking a declaratory judgment that (1) the relationship of insurer and insured does not exist between Plaintiff and Defendant as regards the incident of June 30, 2018; (2) Policy No. BUS5645186-00 does not afford coverage to Defendant for the incident of June 30, 2018; and (3) Plaintiff is entitled to recover from Defendant its costs, including reasonable attorneys' fees as allowed by law. ECF No. 1 at 7. On August 12, 2019, Defendant filed an Answer to the Complaint. ECF No. 5. Defendant asserted that he did not receive proper notice of cancellation, as he did not receive the mailed notice, and noted that the Notices of Declination had been provided by email. *Id.* at 7. Defendant also stated that a declaratory judgment action was pending in South Carolina Court of Common Pleas in the of Horry County, *id.*, but that action has since been dismissed due to the pending action in this Court, *see Robert Carnes v. Geico Marine Insurance Company*, No. 2019-CP-26-01838 (Sept. 4, 2019). On April 3, 2020, Plaintiff filed a Motion for Summary Judgment. ECF No. 12. A Rule 12/56 notice was mailed to Defendant that same day. ECF No. 13. Defendant did not file a response.

3

## II.     STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson*, 477 U.S. at 255.

When a party fails "to file counter-affidavits or other responsive material [after being] alerted to the fact that his failure to so respond might result in the entry of summary judgment against him," it may be proper to proceed with summary judgment. *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). Accordingly, the Court will treat Plaintiff's motion as unopposed, while recognizing that a motion "will not be granted automatically simply because [it is unopposed]," 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1190

(3d ed. West 2010), and the movant must still demonstrate that it is entitled to judgment as a matter of law, *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

## III. DISCUSSION

The Policy at issue here is a marine insurance policy subject to the Court's admiralty jurisdiction. *See United States v. Tug Marine Venture*, 101 F. Supp. 2d 378, 381 (D. Md. 2000). When interpreting marine insurance policies, state law applies unless (1) a federal statute speaks to the question or (2) there is an applicable judicially-created admiralty rule. *Nat'l Liab. & Fire Ins. Co. v. Rooding*, No. CV ELH-15-2572, 2017 WL 281994, at *6 (D. Md. Jan. 23, 2017) (citing *Wilburn Boat Co v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–14 (1955)). The Court is not aware of a specific and controlling federal rule and will therefore apply state law.

Federal maritime choice-of-law rules govern which state's law to apply. *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.,* 190 F.3d 26, 30 (2d Cir. 1999). "It is well established under federal maritime law that absent a compelling reason of public policy, a freely negotiated choice-of-law clause in a maritime contract should be enforced." *Triton Marine Fuels Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 413 (4th Cir. 2009).[2] The Policy at issue here contains a choice-of-law clause. ECF No. 12-3 at 16. Section V, Paragraph M of the Policy provides in part, "[t]his policy is to be construed under the United States federal admiralty law. In the absence of controlling United States federal admiralty law, this policy is to be construed

---

[2] As discussed in *Am. S.S. Owners' Mut. Prot. & Indem. Ass'n, Inc. v. Dann Ocean Towing, Inc.*, other circuits have articulated the standard differently, finding that a choice-of-law clause is enforceable unless (1) that jurisdiction has no substantial relationship to the parties or the transaction or (2) that jurisdiction's law conflicts with the fundamental purposes of maritime law. No. CIV. CCB-08-2195, 2012 WL 1565141, at *2 (D. Md. May 1, 2012), *aff'd sub nom. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Dann Ocean Towing, Inc.*, 756 F.3d 314 (4th Cir. 2014); *see, e.g.*, *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Henderson*, No. 10 CIV. 8033 PGG, 2013 WL 1245451, at *3 (S.D.N.Y. Mar. 26, 2013). However, as in that case, the choice-of-law clause in the Policy at issue here would be valid and enforceable under either standard. Defendant resides in South Carolina, and thus the jurisdiction has a substantial relationship to the parties. There is no conflict between South Carolina law and the purposes of maritime law.

under the laws of the state . . . listed in the Declaration Page as 'your' address[.]" *Id.* Defendant's address is in South Carolina. *Id.* at 1. Thus, because there is no "compelling reason of public policy" counseling otherwise, South Carolina law applies.

The Court next turns to whether, under South Carolina law, Defendant was given proper notice of the Policy's cancellation, such that the Policy was not in effect on June 30, 2018. Under South Carolina law, actual receipt of a notice to cancel is not required "[w]here the clause applicable to the insurer's right to cancel the policy provides for the exercise of such right by mailing of notice to the insured's address, or contains substantially similar language[.]" *Moore v. Palmetto Bank*, 238 S.C. 341, 345 (1961). South Carolina courts have required actual notice only where the method of notice stated in the policy was ambiguous—for example, where the insurance policy provision stated that the insurance company could cancel the policy "by giving to the insured a five days' written notice of cancellation" rather than specifying that the notice would be mailed. *Wactor v. Jackson Nat. Life Ins. Co*., No. CA 8:11-3167-TMC, 2013 WL 3479767, at *2 (D.S.C. July 10, 2013), *aff'd*, 604 F. App'x 220 (4th Cir. 2015) (discussing *Edens v. S.C. Farm Bureau Mut. Ins. Co.,* 279 S.C. 377, 379 (1983)).

Here, the Policy states, "[t]his cancellation notice will be mailed to 'you' and 'your' agent of record, if any, at the address shown on the Declarations Page, and proof of such mailing shall be sufficient proof of notification." ECF No. 12-3 at 2. This statement is unambiguous. Accordingly, actual receipt by Defendant was not a condition precedent to cancellation of the Policy, and mailing of the notice of cancellation was sufficient to effect cancellation. *See Moore*, 238 S.C. at 345. The Policy was thus cancelled effective April 14, 2018. *See* ECF No. 12-8. Because the Policy was no longer in effect at the time of the incident of June 30, 2018, the

relationship of insurer and insured did not exist between Plaintiff and Defendant on June 30, 2018, and Policy No. BUS5645186-00 does not afford coverage to Defendant for the incident.

Finally, the Court considers Plaintiff's request for costs, including reasonable attorney's fees. As the prevailing party in this suit, Plaintiff is entitled to recover the costs specified in 28 U.S.C. § 1920. *See* Fed. R. Civ. P. 54(d)(1); *Am. Home Assur. Co. v. Masters' Ships Mgmt. S.A.*, 423 F. Supp. 2d 193, 228 (S.D.N.Y. 2006), *aff'd,* 489 F.3d 497 (2d Cir. 2007) (awarding costs under Rule 54(d) in a maritime insurance action); *see also Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999) (finding Rule 54(d)(1) "creates the presumption that costs are to be awarded to the prevailing party"). However, "in general, attorney's fees are not recoverable in admiralty actions." *All Underwriters v. Weisberg*, 222 F.3d 1309, 1313 (11th Cir. 2000); *see also INA of Texas v. Richard*, 664 F. Supp. 256, 258 (S.D. Tex. 1987) ("Admiralty courts historically have denied attorney fees absent federal statutory authority or other exceptional circumstances.").

The federal circuits disagree as to whether this general rule applies in the context of marine insurance contract disputes. The Fifth and Eleventh Circuits concluded that state law governs the award of attorney's fees in that context, *see Weisberg*, 222 F.3d at 1313; *INA of Texas v. Richard*, 800 F.2d 1379 (5th Cir. 1986), while the Second Circuit determined that federal maritime law precludes the award of attorney's fees in marine insurance contract disputes, *Am. Nat. Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270 (2d Cir. 1995).[3] The Fourth Circuit does not appear to have addressed the issue, but courts in this District have sided with the Fifth and Eleventh Circuits. *Carney Family Inv. Tr. v. Ins. Co. of N. Am.*, 296 F. Supp. 2d 629, 632 (D.

---

[3] Additionally, the First, Third, and Ninth Circuits have held that attorney's fees are not available in admiralty cases, although they did not make those determinations specifically in the context of marine insurance contract disputes. *See Southworth Mach. v. F/V Corey Pride*, 994 F.2d 37, 41 (1st Cir. 1993); *Sosebee v. Roth*, 893 F.2d 54, 56 (3d Cir. 1989); *Narte v. All Alaskan Seafoods, Inc.*, 2000 WL 237923, 211 F.3d 1274 (9th Cir. 2000).

Md. 2004); *see also Pennington Partners, LLC v. J-Way Leasing,* LLC, No. CIV.A. RDB-11-0972, 2012 WL 527661, at *2 n.2 (D. Md. Feb. 17, 2012) (citing *Carney*, 296 F. Supp. 2d 629).

Ultimately, however, this Court need not reach the question, as Plaintiff has not identified a state law basis for its request for attorney's fees. *See Hegler v. Gulf Ins. Co.,* 270 S.C. 548, 549 (1978) ("As a general rule, attorney's fees are not recoverable unless authorized by contract or statute."); *Harris-Jenkins v. Nissan Car Mart, Inc.*, 348 S.C. 171, 176 (Ct. App. 2001) ("In South Carolina, the authority to award attorney's fees can come only from a statute or be provided for in the language of a contract. There is no common law right to recover attorney's fees.").[4] Therefore, Plaintiff's request for costs is granted with respect to the costs specified in 28 U.S.C. § 1920, but its request for attorney's fees is denied.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted, in part, and denied, in part. A separate Order shall issue.

Date: <u>January 8, 2021</u>     __/s/_____
                                GEORGE J. HAZEL
                                United States District Judge

---

[4] Under *Hegler*, an insured party may recover attorney's fees where it successfully defends against a declaratory judgment action brought by an insurer. *See* 270 S.C. at 549. However, Plaintiff does not cite South Carolina legal authority, and this Court is not aware of any, supporting an *insurer's* request for costs and attorney's fees where the insurer prevails. Additionally, while S.C. Code Ann. § 15–53–100 provides, "[i]n any proceeding under this chapter [Declaratory Judgments] the court may make such award of costs as may seem equitable and just," Plaintiff has not argued whether or how that statute supports its request for costs or identified authority relevant to its interpretation. *Cf. Employers Mut. Cas. Co. v. Tavernaro*, 21 F. Supp. 2d 1039, 1040 (E.D. Mo. 1998) (recognizing that a Missouri statute containing identical language to that in S.C. Code Ann. § 15–53–100 has been interpreted by the Missouri Supreme Court to permit attorney's fees to be awarded only under "special circumstances," such as in the case of fraud).